We'll hear argument first this morning in Case 22-721, McElrath v. Georgia. Mr. Simpson? Mr. Chief Justice, and may it please the Court, the most fundamental principle of double jeopardy law, going back hundreds of years before even the adoption of the Constitution, is that if a jury in a court with jurisdiction returns a verdict of acquittal, that that verdict is final, the defendant may not be subjected to a second prosecution ever, no questions, end of discussion. This case is the paradigm in which that example applies, or that principle applies. Mr. McElrath went to trial before a jury in Georgia. The jury found him not guilty of malice murder by reason of insanity. No one has questioned that that jury deliberated in accordance with Georgia processes. It returned a verdict in return – in accordance with Georgia processes. The State and the defendant both affirmatively indicated they had no objection to the form of the verdict. The Court accepted it and entered judgment. According – that is the end of it as far as the malice murder charge is concerned. The State contends that Mr. McElrath can be subjected to a second trial because that acquittal is repugnant to a conviction on separate offenses, and this Court's analysis has always been offense by offense. He was found guilty but mentally ill as to felony murder, and guilty but mentally ill as to aggravated assault. This repugnant verdict exception to the double jeopardy principle does not stand, cannot withstand analysis. The State really makes two arguments. The first is that this Court's inconsistent verdict cases do not apply because there's a difference between a repugnant verdict and an inconsistent verdict, and in particular that with a repugnant verdict there is no uncertainty as to what the jury did. That is wrong as a factual matter because the uncertainty is the same, but more importantly it does not matter because an acquittal is final regardless. It does not matter why the jury reached that conclusion. The acquittal is final and conclusive. I welcome the Court's questions. So your client filed a motion to vacate the conviction as repugnant. What is the effect when a verdict is determined to be repugnant? What's the effect of that? Well, this Court has held... No, I mean the Georgia court. Georgia. In Georgia before this case, and the Turner case in the Georgia Supreme Court is the leading example, the acquittal would stand and the conviction would be vacated. In this case, the Georgia Supreme Court for the first time held that both the acquittal and the conviction should be vacated. I think the, if I understand the opinion below correctly, the Georgia Supreme Court says that because of the repugnancy there was no verdict,  with respect to your motion earlier, was it your goal, was the argument that the verdict was void because it was repugnant or simply that it should be vacated because it was repugnant? Our argument was that the conviction should be vacated. The conviction should be vacated because they were repugnant. Neither side in McElrath 1 raised any question about the acquittal standing. So on appeal, we argued to the Georgia Supreme Court, you should throw out the conviction. But neither side argued that the acquittal was in question. Well, as a general matter, do you agree that it's a matter of State law when jeopardy terminates? Because that's the basic question, right? Whether the defendant is being put in jeopardy more than once. So you have to have the first jeopardy terminate before you can get to the question of whether or not he's in jeopardy a second time. As a general matter, is that a question of State law? As a general matter, yes, Mr. Chief Justice, but that is subject to this Court making the ultimate determination as to what constitutes an acquittal. This Court has held that jeopardy terminates when there is an acquittal. And so within broad ranges, the State has discretion subject to constitutional limitations, due process, speedy trial, et cetera, to set procedures. What if one of the procedures is that the verdict form has to be signed by the jury foreman, okay? And the jury reaches a verdict, you know, 12 to nothing or whatever, that the defendant is not guilty. But the jury foreman, you know, as he's presenting the verdict or whatever, decides, you know, I have second thoughts. I'm not going to sign it. So as a matter of State law, does that verdict terminate the first jeopardy or not? No, because the signing of the verdict is a procedural requirement, and the State is free to enforce that procedural requirement. The difference here, and the Georgia Supreme Court opinions acknowledge this, is that there was not one verdict. There were verdicts. No one questions there were verdicts. And to determine that that verdict was void, the acquittal, the Georgia Supreme Court looked at the acquittal, looked at the conviction, compared the two after the fact, and concluded that they were repugnant, and therefore declared them to be void. So you would say the question before us is whether Georgia, as a matter of State law, can say that a verdict, that jeopardy has not terminated until, for example, they determine that the verdicts are not repugnant. They draw a distinction between inconsistent verdicts, on which, of course, we already have established law, and repugnant verdicts. So, I mean, what if they have a system where once the jury has reached a verdict, it's not effective for a week to give the jurors a chance to ponder it a little bit more for the whatever reason. When would jeopardy terminate in that case? The issue there, Mr. Chief Justice, would focus on, I would say due process in particular as to those procedures by which the verdict needed to be returned, what the State can't do. Well, but what – I asked about what the State did. Is that something they can do? What they – In other words, say, yes, the jury has determined, you know, not guilty, but under State law, that's not effective for another week. Well, no. And in that interim, of course, the juror dies or, you know. No, no. I apologize. Once the verdict has been returned, this Court's cases, including Ball going back to 1896, would hold once the verdict has been returned, that's what terminates jeopardy. Okay. So, well, let's say Georgia says that's not the verdict, that is the preliminary determination. So they turn into the Court and announce, here, our preliminary determination is unanimous that not guilty. And under Georgia law, that is a preliminary determination. It becomes the verdict after one week. It would be, I believe, a due process question as to whether that procedure passes muster. The procedural aspects, the State has broad discretion. What they can't do is make a decision based on the content. So that it's – Is that because it's a matter of Federal law? I mean, I guess I don't understand your response to the Chief Justice's first question, which was, is this question of when something is an acquittal a matter of State law or Federal law? And I understood it to be a Federal question, such that when we looked at double jeopardy in prior cases, I'm thinking about Bluford v. Arkansas, for example. Yes. We evaluated it as a matter of Federal law, correct? Well, ultimately, this Court determines what constitutes an acquittal. So, for example, Bluford is an example of a case in which the jury failed to reach a verdict. So no matter what label the State puts on it, if the State can have all kinds of questions, if the State can say, well, you know, we're going to say that this particular result is not an acquittal, we've held, I thought, that it's sort of a functional analysis and that as a matter of Federal law, we look at what happened and determine what counts as an acquittal. Exactly, Justice Jackson. In smallest, this case, the Pennsylvania Supreme Court had characterized the granting of a demur as not an acquittal. This Court held that it was an acquittal. Similarly, in Evans, Michigan had held that the ruling by the Court in a case in which the judge mistakenly thought there was an additional element was not an acquittal. This Court held it's an acquittal. The definition of acquittal, just last term, in the Smith case, this Court defined what an acquittal is, and that is a determination, a resolution of criminal culpability. Well, to pick up on that. I'm sorry. Sorry. To pick up on that, Mr. Simpson, it's my understanding that there are jurisdictions in which the rule is that if a jury returns an inconsistent verdict or some subcategory of inconsistent verdict, the proper procedure for the trial judge is to instruct the jury, you can't do that, your verdicts are irreconcilable, go back and deliberate some more. Is that your understanding, too? I'm not aware of a State that does that. Our position would be that that would violate the double jeopardy clause, but of course you don't need to reach that here because the verdict was accepted. Well, I believe, I stand ready to be corrected if I'm wrong, but that's the rule in Missouri, Kansas, Arizona. So let's assume that that's, that does not violate double jeopardy. If we were to hold that it does, then our decision here would have implications beyond Georgia. Assume that that's, that that is the rule. Yes. If that is the rule, then would it be a violation of double jeopardy for this to occur? The judge violates, the trial judge violates State law, accepts the inconsistent verdicts, and accepts the conviction on one count, acquittal on the other count. One of the parties says, no, you violated State law, there's an appeal, and the State Supreme Court says, no, this was a violation of State law. Go back and retry both counts. Once the verdict – Would you draw a distinction between those two situations? I would draw a distinction, and I believe you're correct that Missouri does follow that process, or at least I've seen a case in which they did that. The difference would be that once the verdict has been accepted, then going up on appeal, it could not be challenged, for much the same reasons that in the Evans case, notwithstanding that the judge quite explicitly based his decision on an element of the crime that didn't exist, this Court nonetheless held that's binding once that verdict was accepted. Well, that seems to make the rule that you're asking us for, you know, pretty insignificant, right? If we come out of this case, and it turns out that when the jury form is given to the judge, the judge can look at it and say, no, I don't think so, that looks inconsistent, that looks repugnant, whatever word you want to put on it, go back and try it again. You know, in the next case, the judge is just going to do that, and so this will be a one-case-only sort of ruling. And, Justice Kagan, that is not our position. Our position is that once the jury returns the verdict, that that double jeopardy protection is triggered, that the jeopardy has ended. I wanted to make the point that there's a distinction. That's not what happened here. But we believe that once the jury has returned the verdict and there is an acquittal, that's the end of it. The judge may not send it back. Now, that doesn't have to be decided in this case. Alito. Well, do you have – I mean, you argue that a State can't take what's really an acquittal and put some other label on it and say, no, there wasn't an acquittal. Yes. But do you have any double jeopardy precedent from this Court, or for that matter from lower Federal courts, saying that a State cannot have a procedure like the Missouri procedure? The repugnant – oh, the State can't have a rule that says the trial judge is not to accept inconsistent verdicts or repugnant verdicts. That's a violation of double jeopardy. I'm not aware of a case directly on point on that issue. The principle, I think, would be the same as raised here. Another related question. This is my other point of concern about this case. You seem to agree in your reply, Briefer, at least you don't contest the proposition that if a jury returns inconsistent verdicts or repugnant verdicts on the same count, the double jeopardy clause does not prohibit the judge from saying, no, you can't do that, go back and deliberate some more. Is that a violation – is that correct, that's not a violation of double jeopardy? If, in your hypothetical, from those inconsistent verdicts, one cannot ascertain whether there has been an acquittal or a conviction, then we believe that is distinguishable. And going back to your earlier question, going back again to 1896 in Ball, this Court did hold that the return of the verdict terminated jeopardy, notwithstanding that the indictment was invalid ultimately. So I think that is close to on point. So what principle distinguishes – one more question along these lines. What principle distinguishes the situation where there are inconsistent jury determinations on one count from the situation where there are logically irreconcilable jury determinations on two counts? I don't – maybe there's a principle that explains that. Other than a lot – a formal difference, I don't really – it doesn't jump out at me why that should be different. The difference, Justice Alito, is that double jeopardy has always been analyzed on an offense-by-offense basis. So the question is, was there a verdict on the particular offense? And if what the jury returns does not show that there has been a verdict, you can't tell what the jury determined, then it's appropriate to ask them to deliberate further. What the Court can't do in that circumstance is to look at the content of two verdicts and say, we're going to compare the jury's findings on this count with its findings on this separate offense. And based on an analysis of the contents – Is there a logical principle, though, that explains that, other than you just said it's always been that way? In terms of, Justice Kavanaugh – Offense-by-offense versus, as Justice Alito says, one count. Yes. Historically, each offense was brought in a separate indictment. This Court held, I believe in Dunn, that when you have a multi-count indictment, it's still an offense-by-offense. And the logical principle is it's a different crime. Each count is a different crime. So here – I thought the distinction was rather more simple than that. I had one of those cases on the Tenth Circuit where the jury – Yes. Chippling. The jury came back on one count and said, guilty and not guilty. Yes. And the judge said, I don't know what to do. Yes. You've not returned a verdict of acquittal. You've also returned a verdict of guilty. Yes. Go back and figure this out, folks. And that seems to me a world away from a verdict on any count that says this individual is not guilty in the eyes of his peers. Exactly, Justice Gorsuch. And the opinion you wrote in the Shipley case didn't reach the double jeopardy issue. Oh, I took care not to come close to this case. You did say it about three times. About four times. How can a defendant be both sane and insane? It cannot be. But isn't the principle that we have juries that are – their decision-making is sort of inviolate? In other words, the jury can nullify on a particular decision. We don't go back and try to figure out the jury's thinking with respect to inconsistent verdicts across different counts. Because they can do whatever they want. That has been sort of a time immemorial principle with respect to jury deliberations, right? Yes, Justice Jackson. And that's exactly why we propose this test of looking at the contents. What the State can't do and what it is seeking to do here is to look at the contents of the jury's findings on two different crimes and say we're going to compare those after the fact and throw out the acquittal. But how is it different from Justice Gorsuch's question to say the defendant's both guilty and not guilty, and then in the next case the jury says the defendant's both sane and not sane? The difference is that those verdicts in the second example are on separate offenses. And so it's like – it's no different than one of the cases this Court has dealt with. The defendant is convicted of conspiracy to possess cocaine, but acquitted of possession of cocaine. That's impossible. No different from a repugnant verdict. That can't be right. But this Court has consistently held you can't look at it after the fact. I guess the principle we allow juries to compromise in ways that are maybe not completely logical. But when it gets down to one count, they can't do guilty and not guilty. That's not an acceptable compromise, is it? Well, exactly in the sense that they haven't rendered a verdict on the charge. So here, for example, the charge is malice murder. If they come back and say guilty and not guilty, you don't know what the jury did. You seem to have accepted a premise that I'm doubtful about, which is you can't be insane on one count and not insane on another. But malice murder has a different mens rea than assault, correct? It does, yes. And so you can be not guilty by reason of insanity with respect to a malice murder because you have to be able to have mental capacity enough to form that intent. But that's different than the assault intent, correct? The assault intent only requires you to injure, and this man could have had that. He was delusional about the reasons he was causing pain, but he knew he was causing pain, correct? The elements of the charges are different. And under Georgia procedure, though, the state had to prove the elements of each of those crimes. What I'm saying is they're not necessarily. You're buying the other side's argument. On these facts, we believe that there are, in fact, inconsistent, repugnant verdicts because insanity is an affirmative defense in Georgia. The defendant has to prove it by a preponderance of the evidence. And here there was one single episode. Now, in different facts, and, in fact, the Georgia Supreme Court in McElrath talks about a different case in which you could be saying a defendant could be sane and insane at different times. I believe that one was shooting one person and then going down the hall and shooting a different person. But here, because the issue is the affirmative defense, it's exactly the same as to the three charges. The point, again, though, is the jury can nullify, and we don't know why they did what they did. The uncertainty is the same. We don't know why they found him sane on one count and insane on the other, just like we don't know why the jury convicted on possession with intent to sell but not on possession. And, Justice Jackson, your point is exactly right. You can't go back and question that. Once the jury comes back and says not guilty, that's the end of it. And the different- But what are, counsel, what are the limits on that? Because the states can set some procedural parameters, right? Absolutely. So what if there was a rule that said, listen, if a jury, if this has gone on, deliberations gone on for more than two days, automatically it's a mistrial. And then at the very beginning, or let me make it hours so it works better, say six hours, it's automatically a mistrial. And then at six hours and ten minutes, the jury returns a verdict of acquittal. Does that count as a mistrial where jeopardy doesn't? Well, what the Court has held, this Court has held, is that in the mistrial context, if there has to be- Well, no, I understand the rule about mistrial, but I guess what I'm saying is there, you know, the judge just waits. But the rule says, you know, at six hours, it's a line, it's a mistrial. But the jury does still come back and return a verdict of acquittal. It's just that it violates this procedural requirement. Which side of the line does that fall on? I mean, the jury's returned a verdict of acquittal, but state law says it just doesn't count if the jury is deliberated for more than six hours. Well, one of the interests protected by the double jeopardy clause is that the defendant's right to have a decision by the jury that's impaneled. And so I think the question would be, is a six-hour period that automatically triggers a mistrial so unreasonable that it in fact violates double jeopardy? I would think it would. It's a judgment call as to how long. But that would be the issue. Can a state deprive the defendant of his right, her right, to have a decision by the particular jury that was impaneled? So what kinds of procedural requirements can a state impose? Very broad discretion, as I said, subject to due process and right to jury trial, et cetera. But evidentiary, we don't – if you look at the amicus brief here, we don't question evidentiary rules can be set. Does the – all of the jurors sign the form or just the foreperson? Do you poll the jury? Hours that are deliberated? All of those procedural points. And the test that we think captures it is looking at the contents. And that's the red line that the State crossed here, is that they – the Georgia Supreme Court acknowledged it had two verdicts in front of it. No question it had – Justice Pinson and his concurrence, Dubitante, pointed out it's a fiction. It's a legal fiction here that we have two verdicts and we're going to look at the contents, compare them, and based on that comparison, refuse to honor a jury verdict. We're not aware of any other State that allows that, and we think it's a clear-cut violation of double jeopardy. Thank you, counsel. Justice Thomas. Justice Alito. Justice Gorsuch. Thank you, counsel. Thank you. General Petrani. Mr. Chief Justice, and may it please the Court, Petitioner Damian McElrath assumes again and again that there was a verdict in this case. But that's simply not true according to State law as determined by Georgia's highest court. Under Georgia's narrow, sensible repugnancy rule, a jury cannot issue special affirmative findings that facially contradict each other. These incoherent, contradictory statements do not constitute a verdict in the first place. They don't resolve the factual inquiry. In practice, this rule means a jury cannot declare a man both sane and insane at the exact same time with respect to the exact same act, as the jury purported to do here. That's why the Georgia Supreme Court held there was no verdict, no acquittal, and no convictions. McElrath does not challenge that underlying Georgia Supreme Court decision, which, of course, benefited him. And he doesn't explain why we should ignore it now, why we should assume that there was a verdict, even though State law tells us there wasn't. To the contrary, you have to look to the underlying State law to identify whether there is some final verdict or judicial order that could even potentially terminate jeopardy in the first place. And here, because there's no verdict, there's no termination of jeopardy, the double jeopardy clause doesn't apply. Now, other States can have different rules about verdicts, but I think that Georgia's repugnancy rule, if anything, is the most sensible way of responding to a very rare set of circumstances. It's a generally pro-defendant rule that ensures the parties obtain an actual determination of the critical facts. And the critical fact of McElrath's sanity was not determined here. Therefore, he can be retried. I welcome the Court's questions. If you only had one charge here, malice, murder, would there have been a verdict? Well, I suppose it depends on what the jury comes back with. Well, but just everything is the same except it's only one charge. Yeah. In that case, you would have a verdict. So if this constitutes a verdict if there were only one, why does it not constitute a verdict when there are two? Because Georgia does not ascribe to the legal fiction that the jury is finding different facts when they're looking at the exact same facts. So you have a verdict. You say that if there – if it's only malice, murder that we're concerned about, that you would have a verdict here. If that was – yes, if that was all that was in the case, if that was the only thing going on, yeah, I don't see anything. And just everything in the case is exactly the same except there's only one charge. Yeah. Would this constitute a verdict? Yeah. I think under Georgia law as it exists today, that that would be a verdict, yes. So the problem is that up to that point, until you void the verdict, you have what constitutes a verdict. It's not procedurally defective. There's not a jurisdictional problem. You have a verdict that is subsequently voided because it's inconsistent with a separate charge. And I don't know how you get around the notion – and that requires you, by the way, to look at the substance of the verdict. And I don't know how you get around the notion that before you can do that, there actually is a verdict. Well, no, Your Honor, to be clear, here in this case there was never a verdict because, again, the jury issued something simultaneously. It said at the same time, speaking out of both sides of its mouth, he's both sane and insane at the same time. And these were special findings. As we explain in our brief, there's a big distinction between a jury coming back with a, you know, a general verdict of not guilty, which, you know, a jury has the authority to do that for any reason or no reason at all. How do you define general verdict? Guilty, not guilty of both counts? Well, a general verdict of not guilty just says not guilty and you're done, basically. And it doesn't go into any special findings as to what the – The special finding here had to do with whether it was excusable because of mental illness or because of insanity, correct? Yeah. It's not a special finding with respect to the one charge that changes any of the facts of the acquittal. Well, no, Your Honor, the special finding is that he was insane. If he had not been insane, he would have been guilty. That wasn't the question that was posed to the jury standing alone. I mean, I understand your argument if you're saying the jury was asked, is this person insane? And their answer was simply yes in one situation with respect to one count and no with respect to the other. But the jury was asked about the elements of a particular crime and whether he was guilty or not guilty. So their verdict was not guilty by reason of insanity with respect to one of them and guilty, right? Well, yes, Your Honor. With respect to the other. Not guilty by reason of insanity, by definition, means that you did commit the crime and the only reason that we have said you're not guilty is because you are, in fact, insane. I understand, but what do we do with the not guilty part of it? I mean, the jury was not asked on a special verdict form just the pure question of insanity in the way you sort of set it up at the beginning. Well, actually, as a practical matter, Your Honor, I think that they were. I mean, even setting aside the more mundane aspects of this case where the entire trial was about sanity, they were given a special verdict form that has four options. The judge did, in fact, instruct them that they could say not guilty. They always had that authority. So it's not like Georgia is somehow trying to force the jury into, you know, giving up its general power to just say not guilty for any reason. And part of the reason that we think this case is different from, you know, the seemingly facially inconsistent verdict cases is precisely because in this case the jury didn't do that. It actually made special determinations. But special. Roberts. Just looking through the briefs, I didn't see another State that has a scheme like Georgia's that allows an acquittal to be rendered invalid based on its repugnancy with other guilty verdicts. Is that correct? As far as I'm aware, there's no State that has addressed this particular issue, Your Honor. I mean, these are rare circumstances. It's not ordinary for a jury to issue special findings on a particular issue going both ways. But, yes, you are correct. As far as I know, there's no other State that has addressed this issue at all. Now, shouldn't that tell us something? That 230 years in this country's history, we have respected acquittals without looking into their substance and without looking into how they fit with other counts and said, a jury is a check on judges. It's a check on prosecutors. It's a check on overreach. It's part of our democratic system. And we do not ever talk about whether they make sense to us. They may be products of compromise. They may be inconsistent with verdicts on other counts. We don't question them. And this is the first time this issue has arisen here. Shouldn't that tell us something? I don't think so, Your Honor. As we point out in our briefs, the fact that Georgia has a different rule from other States, and, again, I would hasten to add, it's not clear that the rule is different so much as other States just haven't addressed this issue. In a lot of States, you might not have the same sort of defenses or states of mind that would so easily come into conflict, although, again, here, I think this is a rare circumstance. But to get to your point, absolutely, a jury's general verdict of acquittal is one of the most sacrosanct things in American constitutional law, and we're not trying to undermine that at all. But I do think it's important to point out that that's simply not what happened here. They had the option to do that, and, instead, they gave completely contradictory answers about a single factual question. And that raises the question about Missouri's brief, for example. And their concern seems to be within a single count that some States do that, and the case I had, you know, where you just couldn't tell what the jury's verdict was on a count and send the jury back to figure it out. None of that's at stake here, right? Well, I think the principle of the matter arguably extends there. I mean, I — You'd have to extend it. But it isn't an issue. Well, I think the logic is the same. The only difference between each — No, the logic isn't the same. I mean, I'm sorry. I just have to reject that. Assume I disagree with that. Okay. Because the logic for 230 years is a verdict on a count is sacrosanct. Okay? Here we're dealing with not two counts. We're dealing with one count. And we cannot tell what the jury did. The judge doesn't know what to do. He doesn't have his instructions from the jury. Well, Your Honor, I want to be clear about the 230 years. Every time the Court has talked about this and every time the Court has made rulings about this, it's always talking about a general verdict of acquittal. It's not talking about a circumstance where you have special findings that did not have the same sort of status, the same sort of — Why does that make a difference? An acquittal is an acquittal is an acquittal. Oh, I think it makes — Since time immemorial. Now you're telling us an acquittal isn't an acquittal if it's a special verdict form? No. What I'm saying is it's not an acquittal if the jury did not, in fact, resolve the factual question that supposedly underlies that acquittal. And in this particular case, we know because they said two contradictory things that they didn't, in fact, resolve that particular factual point. We also know that the jury was polled. They stood by this verdict. We know that there were no objections contemporaneously by Georgia prosecutors. And I think we also know that the attorney general, at least below, said that acquittal is an acquittal. Well, no. What the attorney — well, what the brief below said, and it was a tangential footnote that really wasn't getting into the issue, is that where there's an acquittal, double jeopardy applies. And we're not contesting that at all. Much like McElrath here today and throughout his briefing, which is sort of assumed You said that retrying Petitioner on the murder count would, of course, violate double jeopardy. Yeah, on the basis that there was an acquittal. But that brief didn't really get into that issue. And the primary brief in the case, the DA brief, did reject that particular position. But I'd also say, going back to, well, did Georgia, you know, have a problem with this at the time?  From Georgia's perspective, from the prosecution's perspective, it was — it got what it wanted, right? There was, in fact, a — you know, in its — to the extent that you accept these as verdicts, to the extent you don't accept Georgia's repugnancy rule, McElrath would be in prison for life. So the only one who had an incentive to challenge this was McElrath, and he did. And his theory was, well, these are repugnant verdicts. It's not unusual for a defendant to challenge the guilty verdicts. Oh, absolutely. I'm not — I mean, that's what appeals all are about. Are you saying — I mean, maybe you could get rid of the repugnancy rule allowing him to say that the guilty verdicts are repugnant given the acquittal, but I don't see how it works the other way around. Well, the point is that his theory was a Georgia rule that, as the Georgia Supreme Court, the highest arbiter of Georgia law says, says there's no verdict at all. That's the theory behind this rule. And if there is a verdict, the rule doesn't really make sense anymore. But before our inconsistency cases, there might have been a lawyer standing where you were saying our state has decided that when a jury comes back with two inconsistent verdicts, we're going to say that there's no verdict at all, because, after all, how can there be a verdict if there's inconsistency? And you're saying that there's — and we rejected that out of hand and in numerous cases. So you're saying that there's a difference between that and this repugnancy situation. I guess I just don't understand what it is. So could you explain it to me a little bit more? Yes, Your Honor. The first point that I would make is that all of those inconsistent verdicts cases assume that there are verdicts to begin with, and none of them was the court looking at, well, was there — But again, a lawyer could have come up here and say, as a matter of State law, we're going to just say that there's not a verdict when the verdict is — when the supposed verdict is inconsistent with another one. So, you know, the State could have made the exact same argument. And surely we decided against that argument when we — when we had — when we decided those cases. Well, my point was simply that no one was making that argument. Powell itself and the paradigm — If somebody had been making that argument, surely we would have rejected it. Yes, I think you would have. But I think the reason that you would have, and I think that this Court has said this, said it in Smith, it's — last year it said it elsewhere, is that there's something special about a general verdict of not guilty. It said this in Powell. This is something that goes back hundreds of years, that a jury's authority to say not guilty, even if we believe that he is, in fact, guilty, is something that goes, you know, prior to the founding and beyond. I mean, it seems to me that it's the exact same thing, really. I mean, when a jury comes back with inconsistent verdicts, we don't really know what happened. I mean, one possibility of what happened is the jury made a humdinger of a mistake. And another possibility of what happened is that the jury made no mistake at all, but instead decided to compromise something out or decided to show leniency of a kind that is within the right of a jury to show. And so, too, here, the jury might have made a humdinger of a mistake in the way that you're suggesting, but in addition, the jury might have decided to compromise things out or to show leniency. And in that sense, we would be intruding into the jury's deliberations as much in your case as in the inconsistency cases if we adopted your rule. No. And the reason I don't think that that's true, Justice Kagan, is when a jury issues a verdict, a general verdict of not guilty, you don't know what the jury did, and you can't look into why. Here, you still aren't going to look into why, but they told you what they did. They said, we found him both sane and insane. And so it's just a very different thing. We're not hunting for some sort of internal thoughts of the jury or something like that. We have in front of us two different things that the jury said about the same question. We found him both sane on one count and insane on another count, one of which led to a guilty verdict and the other of which led to an acquittal because, let's imagine, we wanted to compromise. It's the exact same thing that you're asking us to look into, which we have always said we will not look into. Well, I disagree, Justice Kagan, because I think in the case of a general verdict of not guilty, as this Court has said many times over the years, and again, even pre-founding, there's something special about that authority. As this Court has said, for instance, in Gowden, a case that we cite, courts by the time of the founding couldn't force juries to issue special findings precisely because there was something special about this general verdict of not guilty. It allowed the jury the space to say, you are not guilty and we're not going to tell you why. But in this circumstance, although the jury had the authority to do that, was instructed on doing that, they didn't do that. Instead, they came out and said, we think he's sane and insane at the same time. So I do think that that's a fundamentally different issue from the jury. And I think when a court looks at that and says, well, actually, you've decided the same issue in two different ways, I think it is a bit legally fictitious to say, well, they were really deciding two different factual issues. I mean, I know it's at least a little bit legally fictitious because, you know, this Court, you know, applies collateral estoppel rules to jury findings on a particular count. So we all acknowledge that there really is one fact that's being decided here, which is his insanity at the time of the crime, and the jury said yes and no. And just to give one example of why I think McElrath's argument here is a little bit formalistic, suppose the jury form were slightly different, and suppose it had an option for guilt and then it had a different option for insanity. And they said guilty on all counts on insanity or on the guilt question, but then on insanity they said yes and no. I mean, that's the same circumstance that we're in here. It's not fundamentally different. It's a jury not actually deciding whether or not they have come to a conclusion. General, are you saying that you can never have plainly inconsistent general verdicts? Are you just saying, I mean, because it kind of sounds like what you're saying. Yes, as a factual matter, yes, I actually think that's true because you could never know. The jury might have just said, yeah, you're guilty of sin, all the facts are there, but we don't care. We're going to say not guilty anyway. So you can never know that what they did was factually inconsistent. They might have just said, yeah, you did it all, but we're going to let you off on this particular count. So I think it's just a matter of logic. You can never know that two general verdicts are absolutely inconsistent with one another. That's why in our brief we referred to it as kind of seemingly inconsistent, but because the jury could be deciding this on a totally nonfactual basis, you can't know that they're actually inconsistent. But wasn't Justice Gorsuch's point that even if we know that they are inconsistent, so what? I mean, the point is that we've said a jury can issue inconsistent verdicts. So your argument seems to be, well, the distinction that Justice Kagan was asking you about is that in one situation we don't know it's inconsistent and in another situation, this situation, we do know. Okay. I mean, fine. So it's inconsistent. Why does that mean that the Court gets to say you aren't able to do that, jury? You know, you can retry this person or you have to set it up so he can be retried because that's not a valid thing for the jury to do. Well, two points, Your Honor. The first is it's not, you know, I'm not speaking from nothing when I say that the inconsistent verdicts cases are different because we don't know what the jury has done. This is what the Court has said. We don't know what the jury has done. But the second reason is I think the reason that a jury can issue a verdict of not guilty, a general verdict of not guilty, and a State can't say, oh, that's not really a verdict because it may or may not be inconsistent with this other one, is because of the right to a jury trial and the fact that, as this Court has explained on numerous occasions, a jury always has that authority. A State can't say you don't have the authority to issue this general verdict of not guilty. And we cite several things in our brief. I don't think McElrathy denies that with special verdicts. I guess my question is, why is it, and I think your argument is turning on this, that a State can tell the jury they have to be factually consistent? So even if I accept your distinction that you are drawing with Justice Kagan and that, you know, in this particular world we have evidence that there's a factual inconsistency with respect to the way they rendered their verdicts, why is it okay for the State to say you can't do that? Again, two points, Your Honor. The first is I think that as a matter of sensibility, the jury is supposed to find facts. If they don't find the facts, if they instead tell you two opposite things, it makes a lot of sense to say the jury has not in fact found this fact. But the second one I would say is it's McElrath's burden to identify why a State can't do this. It is the strong presumption that a State does have authority over its own criminal laws and procedures. And unless there's something in the, you know, kind of fundamental right to a jury trial or something like this. Isn't it the Constitution? I mean, I thought, I guess my question is, isn't there, isn't this a matter of Federal law as to whether or not what is happening here is an acquittal or not an acquittal for the purpose of the Double Jeopardy Clause? So what a State order or finding or something like that, the effect that it has for the purposes of Double Jeopardy is ultimately a Federal question. But what the State order is and whether it exists in the first place, that's not necessarily a Federal question. And I would point the Court to Smith v. Massachusetts and Sadezon v. Pennsylvania. In Smith v. Massachusetts, the Court did hold that this midtrial judicial acquittal triggered the Double Jeopardy Clause. But it said, if Massachusetts had a rule that this wasn't a final order, that it could be revisited, that they could come back to it later, well, then it wouldn't trigger Double Jeopardy. Roberts. So what if the State had a rule that the foreman has to sign the verdict in blue ink, all right, and he signed it in black ink? And the judge, you know, it's supposed to be blue ink, go back. He goes back and then one of the jurors changes their mind. Is that rule of State law sufficient to constitute a determination of when Jeopardy was terminated? Yeah. I think if the State has a rule. You think it is? Yeah. I think if the State has a procedural rule that has to be complied with, and by the time that it was complied with, the jury is not unanimous, I think the general presumption would be, yes, it's fine. If there's something about that that's You wouldn't think that that's a, whatever, frivolous rule that shouldn't impede the Federal law determination? So, well, this is what I was going to say, Your Honor. As this Court has said many times in many contexts, whether it be property or last year in the Elections Clause, you know, at some point, if a State rule is so outside the bounds of kind of normal, reasonable legislation or adjudication, then you might say, well, you're just evading, you know, some Federal right here. So in the property context, you can't just redefine a taking of a tax or something like that. But the presumption would be, yeah, the State is allowed to do this unless there's some way in which it's evading Federal constitutional guarantees. Well, and I guess the argument would be, even in the context of your understanding that it's the only State that has done this in 230 years, and maybe that's outside the or normal understanding. Yeah. So that is, at the very least, that's the right kind of argument that McElrath should be making here. But the reason I reject that is because, first of all, I don't accept the notion that no other State has ever had a rule anything like this. It's true that no other State appears to have actually come across facts exactly like this. But we point to examples in our brief, and the Missouri amicus brief has others of kind of similar situations where they do, in fact, have rules that appear at least similar or analogous to our rule here. And we also point to cases like in the Morgan article from before the founding, where cases especially where special verdicts seems to be inconsistent with even general verdicts of. You hang a lot on the special findings being different from a general verdict, but couldn't the inconsistent or repugnant special findings be the product of compromise or leniency? Well, I think that this goes back to my answer to Justice Kagan earlier, which is we don't look behind what the jury did to sort of understand their motivation. So they issued special verdicts that are completely incomprehensible when put together. But couldn't they be the product, I guess to go back to my question, couldn't they be the product of compromise or leniency? Yeah, they could have. I mean, what the jury did, I have no idea. I wasn't in the room, and that's kind of the point. But it could be compromise. It's at least theoretically possible that the jury wanted to do something like be lenient. But the reason that a general verdict is so different. Or compromise, right? Yeah, although I don't take the court's mention of compromise in the inconsistent verdicts cases to be sort of blessing that as something that's like good for a jury to be doing necessarily. It's just you can't tell. They could have done any number of things. Well, the founders certainly thought it was important. And, you know, go back to the trial of John Zanger. He was guilty as heck. And yet the jury acquitted him. And that was considered one of the great moments in American history leading up to the adoption of the Seventh Amendment. And so I guess Justice Kavanaugh and I think Justice Kagan have put their finger on it. The minute you admit that it could be a product of leniency or compromise, we're done, aren't we? Because then we have to respect that verdict. Regardless of whether we think it's rational or what we would do, it's supposed to be a check on us judges and you prosecutors. Your Honor, prior to the founding, there was a period of time when courts would try to sort of corral juries by forcing them to issue special verdicts. And what came out of this was that the way we are going to make sure your right to a jury trial is always a check on the executive, the legislative, whoever else, is by making sure you can always get a general verdict of not guilty. So that's how I would ---- I guess if you'd answer the question, though, the moment you admit that you are ---- that that verdict could be a product of compromise or leniency, why isn't that the end of the game? Because I don't think that the jury necessarily ---- I don't think the right to a jury trial includes the right for the jury to try to issue completely incomprehensible special findings to sort of game out what they're doing. So in this case, for instance ---- The jury doesn't have a right to do leniency and compromise. No, Your Honor. They obviously do, and they could have in this case with a general verdict of not guilty. But to be clear, when they issued this, you know, purported verdict, assume you accept it, it has consequences for McElrath. So the idea that the jury can, you know, consign him to a mental health hospital until he is, you know, determined not to be dangerous anymore as sort of some version of leniency, I think is getting way outside of the ordinary general verdict of not guilty is the jury's ultimate choice. Well, I'm not ---- that's one thing that, well, I'm interested in your view on. You seem to say this is different than inconsistent verdicts, which could be explained by juror, a compromise, leniency, whatever. I don't know why the same thing doesn't apply to repugnant verdicts. I don't know that the jury necessarily would be as sophisticated as the counsel today in explaining what's a repugnant verdict versus what's an inconsistent verdict. And after back and forth, they might just ---- it might be compromise. Okay. We're going to say he's sane for this and guilty. He's not guilty by reason of sanity. You know, this group is fine with one. That group is fine with another. I don't know that they thrashed through the law about whether they would have to be reconciled or not. Yeah, Your Honor, I think that the reason a general verdict of not guilty is different is because of leniency. I don't think that a State is powerless to basically say, no, you're not allowed to, like, compromise by coming to completely incomprehensible conclusions. I do think a State is prohibited from keeping a jury from issuing a general verdict of not guilty because of the jury's historic function as a check on the executive. And I think in this case, the jury had the authority to do that. It had the power to do that. It chose not to do that. Instead, it issued special findings that nobody knows necessarily the motivation, the internal motivation of the jury for that. But what we know is what they actually did. Sotomayor, you keep talking about general and special verdicts and having tried so many cases. I think of special verdicts as verdicts where you ask each element of the offense separately. And then you come to the judge then decides whether that's a guilty or not guilty. A general verdict is, are you guilty or not guilty, but based on the elements, based on whatever special defenses. And almost always you had, is he guilty by reason of insanity or not? That's what they did here, right, on the malice murder? It was not guilty by reason of insanity. Right. They didn't ask, did he have malice, the intent to kill? Did he kill this person? Did he do? They just said, is he guilty by reason of insanity or guilty but with mental illness, correct? And they just checked off which of the elements. Yes, they had four options. All right. So in Smith last year we said an acquittal takes place when there is a merits related, quote, resolution, correct or not, of some or all of the factual elements of the crime charged. Here the jury was given malice murder. One of the factual elements is the mental state, guilty by reason of insanity or not. They said not. I don't know how this doesn't fit Smith's definition of what an acquittal is. You want to call it a general verdict, but Smith said all we're looking at is what the jury did. And the jury said not guilty by reason of insanity. You told Justice Thomas that if it just stood alone that way, jeopardy attached. I still don't understand how you unattach it simply because there's a second charge with a potential inconsistency that you now admit could have been by reason of jury compromise. Briefly, counsel. Your Honor, I don't think States are prohibited from trying to avoid incomprehensible compromises. I think it's just leniency that they have to leave in there with general verdicts of not guilty. As far as whether this is a special verdict or not, Georgia Supreme Court understood it that way. McElrath understood it that way. That was the basis of his argument all the way along, including in his plea in bar in this case. And so the big difference ultimately is that the jury always has the authority to just say not guilty. We don't want you to be guilty of this crime. I don't think there's any historical or other support for the idea that a jury must have the authority to issue incomprehensible special findings. Roberts. Thank you, counsel. Rebuttal, Mr. Simpson. Oh, I'm sorry. I'm sorry. We've skipped the. Now, excuse me. Anything further? I do. I do have some further. Sorry. If you do not prevail in this case, I have two questions. One is can't Georgia going forward solve the problem that you've identified by simply saying that the guilty verdict stand, even if repugnant? Yeah. So if we were to lose this case, I think not only could they, but that is the only logical thing for the Georgia Supreme Court to do. Because the basis of this rule was there are no verdicts at all. Georgia accepts the basic idea that if these are seemingly inconsistent, we'll just accept them as they are. The basis for this rule was we don't think these are verdicts at all. If this Court says, yeah, they are, then I think basically whether McIlrath or the life in prison conviction. Is that still possible in this case? Yes. I think so. I mean, obviously it's going to be up to the Georgia Supreme Court to figure out what to do going forward. But the initial decision was based on the idea that there was no verdict here. And so if this Court were to vacate and remand and say, nope, there was a verdict here, then presumably the Georgia Supreme Court would at least take seriously the argument of, okay, well, then we just reinstate the judgment because the United Thank you. Justice Jackson. Thank you, Counsel. Mr. Simpson, rebuttal. Mr. Chief Justice, may it please the Court. Justice Thomas, you're exactly right that under Georgia law, each of these counts, if it had been charged separately at the verdict, would be a final verdict under state law. It's only by comparing them that you get to repugnancy. It is true that Mr. McElrath appealed in this case. He had the right to do that under Georgia law. And going to Justice Kavanaugh's question, under Powell, states may, as the federal government does when there are inconsistent acquittals and convictions, may allow the conviction to stand. They can't touch the appeal. It's may, not must. Many states throw out the conviction. It's a state choice at that level. And there was the Georgia Supreme Court in the Turner case in 2006, I believe, dealt with what it has said is repugnant verdicts. And it did exactly that. It let the acquittal stand, but it vacated throughout the conviction. We would hope that Georgia would continue to follow that rule. It will be its decision. But there's nothing about a decision by this Court that would require Georgia to change its rule. And in the context of Turner, it reached exactly the result of allowing the acquittal to stand and throwing out the conviction. In terms of repugnancy, I think the key point, as the question has indicated, there really isn't a principal difference here. Mr. McElrath was acquitted of the most serious charge, convicted of the lesser charge. It could have been leniency. It could have been compromise. We don't know why the court reached – I'm sorry, the jury reached that verdict. And then finally, the reference to issue preclusion, where there's a conviction and an acquittal this Court has held, the issue preclusion is not mandatory. So, again, Georgia may, but it's not required to. Unless there are additional questions, that would yield the remainder of my time. Thank you, counsel. The case is submitted.